**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| DAVID SCALSKY, LORETTA GONZALES AND LINDA MACKEY<br><br>PLAINTIFFS,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC., HONDA MOTOR CO., LTD.<br><br>DEFENDANTS. | **CLASS ACTION COMPLAINT**<br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs David Scalsky, Loretta Gonzales, and Linda Mackey, bring this action against Defendants American Honda Motor Co., Inc., Honda Motor Co., Ltd. (collectively "Defendants" or "Honda"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

**INTRODUCTION**

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former Honda Accord vehicle owners and lessees with defective light-emitting diode daytime running lights ("LED DRL" or "LED" or "DRL") headlights in 2016 and 2017 model year vehicles ("Class Vehicles").[1]

2.      This action arises from Honda's refusal to disclose to Plaintiffs and similarly situated consumers that Class Vehicles incorporate defective LED headlights guaranteed to fail prematurely and well in advance of their expected useful life ("the Defect"). LED lights like the DRLs here at issue are intended and expected to function for many years and tens of thousands of driving hours,

---

[1]  Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

yet the LED DRLs equipped in Class Vehicles fail shortly after purchase, typically within the term of Honda's New Vehicle Limited Warranty ("NVLW") or shortly thereafter.

3.       The Defect, which is present in all Class Vehicles as of the time of sale and at all times thereafter, requires Class members to spend thousands of dollars to replace vehicle headlight assemblies in their entirety following premature LED DRL failure—even when assemblies otherwise remain operational.

4.       Adding insult to injury, even when the Defect manifests during the NVLW's term, Honda often denies warranty coverage on grounds the warranty does not cover electrical components like the DRLs, even though the NVLW does not exclude those components from coverage.

5.       But regardless of whether Honda agrees to provide warranty or goodwill coverage for the repairs, Honda nevertheless replaces headlight assemblies with identical, inherently defective headlight assemblies that likewise are guaranteed to fail.

6.       Honda's decision to "remedy" the Defect in in-warranty Class Vehicles using identically defective replacement parts deprives Class members of the warranty coverage for which they bargained when purchasing their vehicles.

7.       Honda's failure to provide an effective in-warranty "fix" instead ensures *all* Class members will eventually pay out of pocket to correct the Defect, regardless of whether it first manifests during the warranty period. Accordingly, Honda's NVLW both fails of its essential purpose and renders the NVLW's durational limitations unconscionable.

8.       The Defect also poses a significant safety risk to the operators and passengers of Class Vehicles.

9.       Among other things, DRLs increase the visibility of the vehicles in which they are equipped in order to reduce the risk of collisions during both ordinary and inclement weather. Indeed, many countries mandate that vehicle manufacturers like Honda equip DRLs on all vehicles.

10.       Because the Defect inhibits the functionality of this critical safety feature, the Defect renders Class Vehicles unsuited for the ordinary and intended purpose of providing safe and reliable transportation.

11.     On information and belief, prior to sale or lease of the Vehicles at issue, Honda learned of the Defect through sources such as pre-release evaluation and testing; repair data; replacement part sales data; early consumer complaints made directly to Honda, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI"), and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Honda dealers; and other internal sources.

12.     Yet, despite this knowledge, Honda has refused-and continues to refuse-to disclose the Defect to prospective customers, and actively conceals and concealed the Defect from Plaintiffs and Class members prior to and at the time of sale while continuing to market and advertise Class Vehicles as safe and reliable, which they are not.

13.     Honda has refused and continues to refuse to acknowledge, prior to and at the time of sale, that Class Vehicles eventually will require costly repairs and that the Defect reduced the value of the vehicle both at the time of sale and any future resale.

14.     In short, Honda's unfair, deceptive, and/or fraudulent business practices have caused current and former owners and/or lessees of Class Vehicles to suffer an ascertainable loss of money, property, and/or loss in value.  The unfair and deceptive trade practices Defendants committed were undertaken in a manner giving rise to substantial aggravating circumstances.

15.     Had Plaintiffs and Class members known of the Defect at the time of purchase, including the safety hazard the Defect poses and out-of-pocket costs of the repairs it will repeatedly and indefinitely require, they would have paid much less for the Class Vehicles, or they would not have purchased Class Vehicles and thus would have avoided the expense of repeatedly replacing their headlight assemblies.  As such, Plaintiffs and Class members have not received the value for which they bargained when they purchased their Class Vehicles.

16.     Accordingly, Plaintiffs bring this action to redress Honda's violations of various State consumer protection statutes and the Magnuson-Moss Warranty Act, and Honda's breach of express and implied warranties.

**JURISDICTION & VENUE**

17.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.  This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

18.     This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and they intentionally and purposefully placed Class Vehicles into the stream of commerce within the district of Maryland and throughout the United States.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants transact business in this district and are subject to personal jurisdiction in this district. Additionally, there are one or more authorized Honda dealers within this district and Defendants have advertised in this district and have received substantial revenue and profits from their sales and/or leases of Class Vehicles in this district, including to Plaintiff **Scalsky** and other members of the Class; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

**PARTIES**

**Plaintiff Scalsky**

20.     Plaintiff David Scalsky ("Scalsky") is a citizen of the State of Maryland, and currently resides in Conowingo, Maryland.

21.     On or about November 30, 2016 Plaintiff Scalsky purchased for personal, family and/or household uses a new 2017 Honda Accord Touring from Heritage Honda Bel Air, an authorized Honda dealer located in Fallston, Maryland. His vehicle bears the following VIN: 1HGCR3F90HA010478.

22.     Prior to purchasing his Class Vehicle, Plaintiff Scalsky viewed advertisements for

the vehicle and the vehicle's window sticker, test drove the vehicle and spoke with Honda sales representatives concerning the vehicle's features.

23.     In addition to touting many of the Class Vehicle's features, the window sticker also touted the vehicle's safety features—including the existence and functionality of LED DRLs—and stated that the vehicle was covered by Honda's New Vehicle Limited Warranty.

24.     In or around December 2018, with approximately 69,000 miles on the odometer, the driver-side LED DRL equipped in Plaintiff Scalsky's Class Vehicle failed suddenly and without warning.

25.     Plaintiff Scalsky subsequently brought the vehicle into Ray Price Honda, which quoted him a repair cost of $1200.

26.     Rather than pay the $1200, in January 2019 Scalsky purchased from Amazon a headlight assembly for $382.46, and paid $201 to a nearby Toyota dealership to install the replacement assembly.

27.     In January 2019 and only about 6,000 miles later, however, the driver-side DRL once again failed.

28.     On January 18, 2019, Scalsky again tendered his vehicle to Ray Price Honda for repairs, which Honda again refused to cover.

29.     Scalsky again acquired a new headlight assembly from Amazon, which he paid Heritage Honda, a nearby authorized Honda dealer, $157.50 to install.

30.     Neither Defendants, nor their agents, dealers, or other representatives informed Plaintiff Scalsky of the Defect's existence at any time, either prior to or following his purchase, whether at the point of sale or otherwise.

31.     Plaintiff Scalsky has suffered an ascertainable loss as a result of Defendants' omissions and misrepresentations relating to the Defect, including but not limited to the $740.96

out of pocket loss associated with repairing the Defect and the diminished value of his vehicle. Had Honda refrained from making the misrepresentations and omissions alleged herein, Plaintiff Scalsky would not have purchased a Class Vehicle and would have avoided the expense of repeatedly replacing his headlight assemblies, or would have paid much less for it.

**Plaintiff Gonzales**

32.     Plaintiff Loretta Gonzales ("Gonzales") is a citizen of the State of California, and currently resides in Whittier, California.

33.     On or about March 18, 2016, Plaintiff Gonzales purchased for personal, family and/or household uses a new 2016 Honda Accord Touring from Norm Reeves Honda, an authorized Honda dealer located in Cerritos, California. Her vehicle bears Vehicle Identification Number ("VIN"): 1HGCR3F98GA018780.

34.      Prior to purchasing her Class Vehicle, Plaintiff Gonzales viewed advertisements for the vehicle and the vehicle's window sticker, test drove the vehicle and spoke with Honda sales representatives concerning the vehicle's features.

35.     In addition to touting many of the Class Vehicle's features, the window sticker also touted the vehicle's safety features—including the existence and functionality of LED DRLs—and stated that the vehicle was covered by Honda's New Vehicle Limited Warranty.

36.     In approximately September 2017, with approximately 24,000 miles on the odometer, the driver-side LED DRL equipped in Plaintiff Gonzales' Class Vehicle failed suddenly and without warning.

37.     Plaintiff Gonzales thereafter took her vehicle to Honda World Downey ("Honda World"), an authorized Honda dealer located in Downey, California.

38.     Honda World informed Plaintiff Gonzales that her driver-side LED DRL had failed, and that she would need to replace the entire driver-side headlight assembly in order to restore functionality to the DRL.

39.     Honda World also informed her that Honda considered the LED DRLs to be wear items, and thus would not agree to cover the necessary repairs pursuant to its NVLW. Honda World instead informed Plaintiff she would need to pay $1,400 to replace her headlight assembly.

40.     Although Honda World asserted Honda would not cover the Defect as its NVLW requires, Plaintiff Gonzales contacted Honda directly to demand warranty coverage for her vehicle. After months of discussions and several phone calls, Honda finally agreed to replace her driver-side headlight assembly at no cost as a matter of "goodwill."

41.     On January 8, 2018, Honda World replaced the failed driver-side headlight assembly at no charge, but used an identical, inherently defective headlight assembly guaranteed to prematurely fail.

42.     Almost two weeks later, with approximately 33,570 miles on the odometer, Plaintiff Gonzales' passenger-side LED DRL also failed.

43.     Once again, Plaintiff Gonzales brought her Class Vehicle to Honda World, which again informed her that Honda would not replace her headlight assembly at no cost as required by its NVLW.

44.     When Plaintiff Gonzales inquired as to her repair options, Honda World informed her that she could either pay out of pocket to replace just the headlight assembly, or she could purchase an extended warranty that would cover the repair, as well as future unrelated repairs.

45.     Faced with the prospect of spending thousands of dollars to repair a latent Defect of which Honda was long aware and for which it should have provided warranty coverage pursuant to

the NVLW, on January 20, 2018 Plaintiff Gonzales agreed to purchase an extended warranty from Honda World for $2772.

46.     Honda World replaced her second headlight assembly shortly thereafter, and restored functionality to the LED DRL. However, Honda World replaced her failed assembly with an identical, inherently defective headlight assembly guaranteed to prematurely fail.

47.     Neither Defendants, nor their agents, dealers, or other representatives informed Plaintiff Gonzales of the Defect's existence at any time, either prior to or following her purchase, whether at the point of sale or otherwise.

48.     Plaintiff Gonzales has suffered an ascertainable loss as a result of Defendants' omissions and misrepresentations relating to the Defect, including but not limited to the out of pocket loss associated with repairing the Defect and the diminished value of her vehicle. Had Honda refrained from making the misrepresentations and omissions alleged herein, Plaintiff Gonzales would not have purchased a Class Vehicle and would have avoided the expense of repeatedly replacing her headlight assemblies, or would have paid much less for it.

**Plaintiff Mackey**

49.     Plaintiff Linda Mackey ("Mackey") is a citizen of the State of Florida, and currently resides in Orlando, Florida.

50.     On or about June 8, 2016 Plaintiff Mackey purchased for personal, family and/or household uses a new 2016 Honda Accord LX from Holler Honda, in Winter Park, Florida. Her vehicle bears the following VIN: 1HGCR3F88GA017426.

51.     Prior to purchasing her Class Vehicle, Plaintiff Mackey viewed advertisements for the vehicle and the vehicle's window sticker, test drove her vehicle and spoke with Honda sales representatives concerning the vehicle's features.

52.     In addition to touting many of the Class Vehicle's features, the window sticker also touted the vehicle's safety features—including the existence and functionality of LED DRLs—and stated that the vehicle was covered by Honda's New Vehicle Limited Warranty.

53.     Plaintiff Mackey's LED DRLs failed almost immediately. The passenger-side DRL failed at approximately 7,433 miles, and the driver-side DRL failed with approximately 8,057 miles on the odometer.

54.     Plaintiff Mackey thereafter brought her Class Vehicle to Coggin Honda, an authorized Honda dealer in Orlando, Florida.

55.     Coggin Honda replaced both lights at no cost, as Honda's NVLW requires. However, Coggin Honda used identical, inherently defective headlight assemblies guaranteed to prematurely fail.

56.     As expected, both lights failed again shortly after Plaintiff Mackey's Class Vehicle exceeded 36,000 miles, and although Honda knew the replacement LED DRLs it installed within the warranty period would fail, Honda refused to replace the assemblies under warranty.

57.     Coggin Honda instead quoted Plaintiff Mackey $150 per light, which Ms. Mackey declined to pay. She is currently driving without the operational driving lights, even though Coggin Honda's service manager informed Plaintiff Mackey that LED DRL failure is a common and known problem affecting Class Vehicles.

58.     Neither Defendants, nor their agents, dealers, or other representatives informed Plaintiff Mackey of the Defect's existence at any time, either prior to or following her purchase, whether at the point of sale or otherwise.

59.     Plaintiff Mackey has suffered an ascertainable loss as a result of Defendants' omissions and misrepresentations relating to the Defect, including but not limited to the diminished value of her vehicle.  Had Honda refrained from making the misrepresentations and

omissions alleged herein, Plaintiff Mackey would not have purchased a Class Vehicle and would have avoided the expense of repeatedly replacing her headlight assemblies, or would have paid much less for it.

**The Defendants**

60.     Defendants are automobile design, manufacturing, distribution, and/or service corporations doing business within the United States.  Furthermore, Defendants design, develop, manufacture, distribute, market, sell, lease, warrant, service, and repair passenger vehicles, including the Class Vehicles.

61.     Defendant Honda Motor Co., Ltd. ("HMC") is a Japanese corporation. HMC is the parent corporation of American Honda Motor Co., Inc.

62.     HMC, through its various entities, designs, manufactures, markets, distributes and warrants Honda automobiles throughout the fifty States.

63.     Defendant American Honda Motor Co., Inc. ("AHM") is a California corporation headquartered in Torrance, California.

64.     AHM is HMC's U.S. sales and marketing division, which oversees sales and other operations across the United States.  AHM distributes Honda parts and vehicles, which are then sold through its network of dealers. Money received from the purchase of a Honda vehicle from a dealership flows from the dealer to AHM.

65.     Upon information and belief, Defendant HMC communicates with Defendant AHM concerning virtually all aspects of the Honda products it distributes within the United States, including appropriate repairs for pervasive defects, and whether Honda will cover repairs to parts and assemblies customers claim to be defective.  Honda's decision not to disclose the Defect to Plaintiffs or the Class, or to cover repairs to the same pursuant to an extended warranty or goodwill program, was a decision made jointly by AHM and HMC.

66.     Based upon information and belief, Plaintiffs allege that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency

and/or employment with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

67.     Accordingly, there exists, and at all times herein mentioned existed, a unity of ownership between each Defendant and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others. Adherence to the fiction of the separate existence of Defendants and each of them, would, under the circumstances set forth in this Complaint, sanction fraud or promote injustice. HMC and AHM, as well as their affiliates, thus are collectively referred to in this complaint as "Defendants" or "Honda" unless identified separately.

68.     Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation and other decisions regarding the LED DRL and the Defect within the Class Vehicles, including whether to provide warranty or goodwill coverage for the Defect, were performed exclusively by Defendants and their affiliates.

69.     Upon information and belief, Defendants HMC and AHM also jointly developed the owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for the Class Vehicles, and jointly design, determine the substance of, and affix to Honda vehicles the window stickers visible on every new Honda vehicle offered for sale at its authorized dealerships, including those omitting mention of the Defect and reviewed by Plaintiffs prior to purchasing Class Vehicles.

70.     Honda controls the content of these window stickers; its authorized dealerships have no input with respect to their content.  Vehicle manufacturers like Honda are legally required to affix a window sticker to every vehicle offered for sale in the United States pursuant to the Automobile Information Disclosure Act of 1958, 15 U.S.C. §§ 1231-1233, *et seq.*  In fact, the Act specifically prohibits the removal or alteration of the sticker by anyone other than the ultimate purchaser prior to the sale of the car, including the dealership at which the vehicle is offered for sale.

## **TOLLING OF STATUTES OF LIMITATIONS**

71.     Any applicable statute(s) of limitations have been tolled by Honda's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and the members of the Class could not have reasonably discovered the true, latent nature of the Defect until shortly before this class action litigation was commenced.

72.     In addition, even after Plaintiffs and Class members contacted Honda and/or its authorized dealers for vehicle repairs concerning the Defect, Honda and/or its dealers routinely informed them that Class Vehicles are not defective, denied warranty coverage for the Defect, and denied the problem existed.

73.     Honda was and remains under a continuing duty to disclose to Plaintiffs and the members of the Class the true character, quality and nature of the Class Vehicles, that the Defect is based on a poor design, that it will require costly repairs, poses a safety concern, and diminishes the resale value of the Class Vehicles.  As a result of Honda's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**A.      The Defect**

74.     Honda is a multinational corporation with hundreds of thousands of employees worldwide.

75.     The "Honda Accord," the vehicle model at the heart of this litigation, is one of its most popular U.S. offerings. Honda sold over 300,000 Accords in the United States in 2017.

76.     The first Japanese car manufactured in the United States, the Accord has been one of the best-selling North American vehicles since 1989. Class Vehicles are available in both coupe and sedan styles, as well as a "hybrid" model first introduced in 2005. Defendants have sold millions of Class Vehicles in the United States, including approximately 670,000 Class Vehicles.[2]

77.     Honda markets Class Vehicles as safe and reliable. For example, upon debuting both the 2016 and 2017 Accord, Honda issued press releases touting the Vehicles' safety features.[3]

---

[2] http://www.goodcarbadcar.net/2011/01/honda-accord-sales-figures/ (last visited Feb. 12, 2019).
[3] *See, e.g.,* https://hondanews.com/honda-automobiles/channels/accord-sedan-coupe-model-press-kit/releases/2016-honda-accord-press-kit-safety-and-driver-assistance (last visited Feb. 12, 2019);

Honda's commercials build upon these themes, and often reference the Accord as a "top safety pick" and tout its "5 star safety rating."[4]

78.     Every Class Vehicle comes equipped with identical headlight assemblies that include LED DRLs. DRLs increase the visibility of the vehicles in which they are equipped so as to make it easier for other motorists to identify other vehicles, reducing the risk of daytime collisions, and also provide additional lighting during inclement weather to improve visibility.

79.     DRLs also enhance vehicle safety on winding roads in forests or mountainous areas in which visibility is lower even during the daytime, and in which motorists are less likely to spot oncoming traffic. In the image below the illuminated lights are the LED lights:



80.     Even Honda recognizes the safety benefits DRLs provide; it identifies DRLs as a safety feature on the window stickers affixed to every Class Vehicle at the time of sale:

---

https://hondanews.com/releases/honda-launches-2017-accord-hybrid-america-s-most-sophisticated-powerful-and-fuel-efficient-midsize-hybrid-sedan (last visited Feb. 12, 2019).
[4] *See* https://www.youtube.com/watch?v=vXEjw_Xgoao (last visited Feb. 3, 2019).



81.     Because of the safety benefits DRLs provide, Honda intended the LED DRLs in Class vehicle to remain illuminated whenever Class Vehicles are in operation.

82.     According to the 2016 Accord Owners' Manual, "[t]he parking/daytime running lights come on when the following conditions have been met:  The ignition switch is in ON…The headlight switch is off, or …The parking brake is released."[5] Owners Manual at 16. The lights remain on even if one turns on the parking brake. Turning off the ignition switch or setting the power mode to VEHICLE OFF will turn off the daytime running lights. Below is an image of a properly functioning LED daytime running light strip:



[5] 2016 Accord Sedan Owners' Manual (Revised 9/28/2015) at 150, available at https://owners.honda.com/vehicles/information/2016/Accord-Sedan/manuals (last visited Feb. 12 2019); *see also* 2017 Accord Sedan Owners' Manual at 152, available at http://owners.honda.com/vehicles/information/2017/Accord-Sedan/manuals (last visited Feb. 12, 2019).

83.     LED lights should, are expected to, and typically do last 30,000 to 40,000 hours, or the approximate expected lifespan of a car.[6] The longevity of LED lights is what makes them particularly well-suited for use in DRLs, which remain illuminated during vehicle operation.

84.     For example, according to the Federal Highway Administration the average US-driver drives her vehicle approximately 13,476 miles annually.[7] Conservatively assuming that drivers average 30 MPH during vehicle operation, the average driver spends approximately 449 hours in her vehicle annually, which implies LED DRLs should last at least 66.7 years, significantly longer than the expected lifespan of a vehicle.

85.     Even if an LED provided a lifespan of only 10,000 hours, LED DRLs would still last more than *22 years*.

86.     The LED DRLs Honda equipped in Class Vehicles, however, uniformly fail within two to three years of purchase, evincing a defect in materials, workmanship, and/or design.

87.     Below is a screenshot of a Class Vehicle that has experienced DRL failure on the passenger-side, but not driver-side:



16-17 Honda Accord LED DRL Module Reference Guide

88.     On information and belief, the Defect in Class Vehicle headlight assemblies, which are uniformly defective, resides in the LED driver utilized therein.

---

[6] See "A Complete Guide to Car Headlights," October 18, 2016, https://www.micksgarage.com/blog/complete-guide-car-headlights. (last visited Feb. 12, 2019).
[7] https://www.fhwa.dot.gov/ohim/onh00/bar8.htm (last visited Feb. 12, 2019).

89.     An LED driver is a self-contained power supply that regulates the power required for an LED or array of LEDs.

90.     The LED driver Honda uses in connection with Class Vehicle DRLs is defective in materials, workmanship and or/design, however, in that it overpowers the DRLs, causing them to overheat, virtually guaranteeing DRLs will fail prematurely.

91.     Adding insult to injury, once Class members experience DRL failure they must replace not only the DRL strip, but the *entire headlight assembly* into which the DRLs are incorporated. A single assembly costs upwards of $1500 once the warranty has expired (or if Honda denies warranty coverage), notwithstanding the fact that only the DRL—but not the headlamp—typically fails.

**B.      Honda's Longstanding Knowledge of the Defect**

92.     On information and belief, Honda learned of the Defect at least as early as 2015, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, through sources such as pre-release evaluation and testing; repair data; replacement part sales data; early consumer complaints made directly to Honda, collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Honda dealers; as well as through other internal sources unavailable to Plaintiffs prior to discovery.

**1.      Honda's Knowledge of the Defect Gained from Pre-Release Design, Manufacture, Engineering, and Testing Data**

93.     During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles, Honda necessarily would have gained comprehensive and exclusive knowledge of the Defect in Class Vehicle DRLs, particularly the basic engineering principles behind the

construction and function of the DRLs and heat sink, and the expected conditions and uses the DRLs would encounter in ordinary and foreseeable driving conditions.

94.     An adequate pre-release analysis of the design, engineering, and production of DRLs equipped in Class Vehicles did reveal, or should have revealed, to Honda that the DRLs are defective and susceptible to prematurely fail well in advance of their expected useful life.

95.     Honda publicly touts pre- and post-production quality assurance processes it implemented to "aim for 120% product quality" because even "[i]f 99% of the products we make are perfect . . . the customers who become the owners of the remaining 1% will surely consider their products 100% defective[,]" and "[i]t is unacceptable that even one customer in a thousand – even one customer in ten thousand – should receive a defective product."[8]

96.     Consistent with its aim, Honda audits its suppliers "for both the production preparation and mass-production stages of supplier operations. Experts in the development and production of individual parts visit manufacturing facilities and conduct audits of suppliers' quality systems and their implementation. Honda then works to improve part quality through activities that emphasize communication with suppliers, for example, by sharing audit results and cooperating to identify opportunities for quality improvement."[9] Honda's extensive and continuous pre- and post-release audits of its DRL supplier would have revealed the heat sinks incorporated into Class Vehicle DRLs are defective and cause the DRLs to fail when they should last much longer than they do.

97.     Moreover, Honda conducts significant durability testing on all of its vehicles, including Class Vehicles.

98.     Honda asserts that it "subjects new and redesigned models to a rigorous regimen of long-distance durability testing before beginning mass production to verify that there are no quality

---

[8] https://global.honda/content/dam/site/global/about/cq_img/sustainability/report/pdf/2016/Honda-SR-2016-en-all.pdf, at 53 (last visited Feb. 12, 2019).
[9] *Id.* at 56.

issues."[10]    Honda then "disassemble[s] vehicles used in the test drives into *every single part* and verif[ies] that there are no quality issues through a process consisting of several thousand checks. By accumulating data on the issues discovered through these test drives and detailed inspections as well as associated countermeasures, [the Company] is able to ensure a high level of quality and reliability."[11] As a result, Honda knew or should have known that the DRLs in Class Vehicles suffer from defects in materials and/or workmanship, and are predisposed to premature failure.

2.    <strong>Honda's Knowledge of the Defect from Repair Data</strong>

99.    Honda also knew or should have known about the Defect because of the large number of claims for DRL failure and headlight assembly replacements made early in the lives of Class Vehicles.

100.    As many of the exemplar complaints cited below demonstrate, consumers complain that the Defect typically causes DRL failure at low mileages and within the warranty period. For instance, the image below is of a comment posted by a Class Vehicle owner to the "Drive Accord" forum, a site popular among Accord enthusiasts, which demonstrates that Honda began replacing DRLs under warranty shortly after bringing Class Vehicles to market.[12]

---

[10] *Id.*
[11] *Id.* (emphasis added).
[12] https://www.driveaccord.net/forums/138-audio-electronics-lighting/312473-what-happens-if-bulb-led-drl-strip-goes-out-4.html (last visited February 12, 2019).



101.    Honda, like all vehicle manufacturers, communicates with its authorized service technicians in order to identify pervasive vehicle defects, and root causes and potential repairs. Honda collects and analyzes field data including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data, in order to determine whether a defect exists and should be covered under warranty or through a goodwill program.

102.    Honda coordinates these efforts through its Quality Innovation Center (QIC) in Togchi, Japan, where Honda "bring[s] together the various components of [its] organization concerned with product market quality information to enhance the functions of 'preventing quality issues' and 'quickly detecting and resolving quality issues when they occur' on a global scale."[13]

103.    The QIC "gathers quality-related data from dealers in Japan and overseas through service departments and customer consultation centers. Measures and policies for preventing quality

---

[13] Honda Sustainability Test Report, *supra* n. 6, at 58.

issues are then developed based on the issues identified from this data and provided as feedback to design, production and the design/production sections for suppliers (parts procurement), etc."[14]

104.    The QIC's operations "consist of pulling together market quality data and sharing information about collected parts and market quality issues. Personnel analyze collected parts, investigate causes and develop countermeasures and improvements in a timely manner. Specialized teams with extensive product knowledge are able to obtain detailed data using a range of analytical equipment. The operational process is configured to facilitate objective and appropriate decision-making based on gathered data."[15]

105.    Honda's review of data relating to DRL failure early in the life of Class Vehicles undoubtedly revealed to Honda that DRLs are universally defective, as well as the nature and root cause of the defect itself.

106.    For instance, although the Class member responsible for the July 20, 2017 NHTSA complaint transcribed in paragraph 120 below did not submit complaint until that date, the member notes that by that date Honda already had replaced both headlight assemblies under warranty on *three* occasions within a year of purchasing the member's vehicle, demonstrating that Honda learned of the Defect almost as soon as it brought Class Vehicles to market.

107.    In addition, Honda also reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles. Honda dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Honda with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the defective component in case Honda later decides to audit the dealership or otherwise verify the warranty repair. These data are inevitably

---

[14] *Id.*
[15] *Id.* at 59.

replete with examples of Honda's failed DRL headlights, as evidenced from the following screenshot showing that a dealership makes "one or two" DRL Headlight repairs per week:



*Available at* https://www.hidplanet.com/forums/forum/general-discussion/leds/1435674-upgrade-drl-for-2016-honda-accord (comment from Honda employee re fixing multiple lights weekly) (last visited Feb. 12, 2019).

108.    For their part, service centers are meticulous about providing this detailed information about in-warranty repairs to Honda because Honda will not pay the service centers for the repair if the complaint, cause, and correction are not sufficiently described.  Due to Honda's efforts to monitor defect trends and the sheer number of repairs and warranty/goodwill requests made in connection with the Defect, Honda knew or should have known of the Defect.

### 3.    Honda's Knowledge of the Defect Gathered from the Large Number of Replacement Parts Ordered from Honda

109.    Upon information and belief, Honda also knew or should have known of the Defect because of the higher than expected number of replacement headlight assemblies ordered from Honda, which should have alerted Honda to this systemic and pervasive Defect in Class Vehicles.

110.    Upon information and belief, Honda service centers use original equipment manufacturer (OEM) replacement parts they order directly from Honda. Furthermore, independent vehicle repair shops that service Class Vehicles also order OEM parts directly from Honda. Therefore, Honda has detailed and accurate data regarding the number and frequency of replacement part orders. Honda certainly knew of the ongoing high sales of Class Vehicle replacement headlight assemblies.

111.    Indeed, as the screenshot above reflects—a copy of a Facebook discussion that a Class member posted to the "HID Planet" forum, a website for headlight enthusiasts—Honda's authorized service technicians have been inundated with DRL repair requests.

112.    The number of OEM replacement parts ordered from and sold by Honda provided it with significant insight into the Defect's scope because of the nature of the DRLs and the assemblies in which they are encased.

113.    Class Vehicle DRLs use LED lighting, which provides tens of thousands of hours of use prior to failure. Honda recognizes that well manufactured and/or designed LED lights do not

require replacement at regular intervals, and thus does not recommend that its technicians replace headlight assemblies at regular intervals.[16]

114.    As a result, the sheer number of replacement headlight assemblies ordered by dealers and third-parties alike did alert, or should have alerted, Honda to the Defect in Class Vehicles.

### 4.    Honda's Knowledge of the Defect Gained from Class Member Complaints Made Directly to Honda

115.    Honda also knew or should have known about the Defect because numerous consumers complained directly to Honda regarding premature DRL failure. The large number of complaints, and the consistency of the descriptions of the DRL failures in the Class Vehicles, should have alerted or actually alerted Honda to this serious Defect affecting a wide range of its Vehicles.

116.    The full universe of complaints made directly to Honda concerning the Defect is information presently in the exclusive custody and control of Honda and is not yet available to Plaintiffs prior to discovery. But Honda actively encourages its customers to contact it regarding pervasive vehicle issues.[17]

117.    On information and belief, however, many Class Vehicle owners complained directly to Honda dealerships and Honda itself about DRL failure in Class Vehicles as evidenced by the exemplar Class member complaints transcribed in Section 5, below, and as did Plaintiffs Gonzales, Scalsky, and Mackey.

### 5.    Honda's Knowledge of the Defect Gained from Class Member Complaints Made to NHTSA.

118.    There exist a large number of relevant customer complaints, many of which indicate that Honda was made aware of the Defect when affected vehicles were submitted for service, on the

---

[16] https://www.southpointhonda.com/honda-recommended-maintenance-schedule.htm (last visited Feb. 11, 2019).

[17] See http://direct.automobiles.honda.com/information/customer-relations.aspx ("Your local Honda dealer is the first stop for any questions or concerns about your U.S. Honda vehicle. This includes product recall and campaign information.") (Last visited February 12, 2019).

National Highway and Traffic Safety Administration ("NHTSA") Office of Defect Investigations ("ODI") Web site, www.safercar.gov, as well as other customer forums and blogs addressing car defect and safety issues. Yet Honda has not taken any steps to recall the Class Vehicles to repair the Defect, or to reimburse customers who have incurred expenses in connection with repairing the Defect. Federal law requires automakers like Honda to be in close contact with NHTSA regarding potential auto defects, and imposes a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

119.    Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers should and do monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Thus, Honda knew or should have known of the many complaints about the Defect logged by NHTSA ODI, and the content, consistency, and large number of those complaints that alerted, or should have alerted, Honda to the Defect. On information and belief, Defendants' Customer Relations division is responsible for monitoring in real-time, *inter alia*, complaints filed by consumers with NHTSA ODI.

120.    The following are but a few examples of the many complaints concerning the Defect available through NHTSA ODI's Web site, www.safercar.gov. The complaints reveal that Defendants, through their network of dealers and repair technicians, were made aware of the Defect. In addition, the complaints indicate that despite having knowledge of the Defect and the exact vehicles affected thereby, Defendants and their agents refused to diagnose the Defect or

attempt to repair it while the Vehicles were still under warranty. The comments reproduced below are but a sampling of available complaints:

| Model | Complaint Date | Notes |
|---|---|---|
| 2016 | July 20, 2017 | LED HEADLIGHT RUNNING LIGHTS GO OUT AFTER 1 YEAR. BOTH HEADLIGHTS HAVE BEEN REPLACED THREE TIMES AT DEALERSHIP. BASED EMAILS OTHER HONDAS TOURING MODELS HAVE HAD SAME ISSUE CAUSED BY DEFECTIVE HEAT SINK IN THE HEADLIGHT. |
| 2016 | September 20, 2017 | … "THE CONTACT OWNS A 2016 HONDA ACCORD. THE CONTACT STATED THAT THE DAY TIME RUNNING LIGHTS FAILED TO ILLUMINATE ON THE DRIVER'S SIDE. THE CONTACT CALLED AN UNKNOWN DEALER AND WAS INFORMED THAT THE BULB NEEDED TO BE REPLACED AND THE CONTACT WOULD HAVE TO PAY OUT OF POCKET. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND REFERRED THE CONTACT TO NHTSA. THE VIN WAS UNKNOWN. THE APPROXIMATE FAILURE MILEAGE WAS 15,300. …" |
| 2017 | October 28, 2017 | THE DAYTIME RUNNING LIGHT LED BAR WENT OUT ON MY DRIVERS SIDE AROUND 30K MILES, NOW THE PASSENGER SIDE HAS GONE OUT AROUND 35K MILES. THE DRIVERS SIDE WAS REPLACED UNDER WARRANTY BUT HAVE NOT GOTTEN TO TAKE IT IN YET FOR THE PASSENGER SIDE. |
| 2017 | October 29, 2017 | THE LED INSIDE OF THE HEADLIGHT ASSEMBLY MELTS THE SURROUNDING PLASTIC CAUSING FAILURE OF THE DAYTIME RUNNING LIGHTS. COMPLETE REPLACEMENT OF THE HEADLIGHT IS REQUIRED TO REPAIR IT. THIS IS A WIDESPREAD PROBLEM ACROSS ALL 2016 AND 2017 MODELS. |
| 2016 | July 9, 2018 | THE DAYTIME RUNNING LIGHTS FAIL AND NEED TO BE REPLACED REPEATEDLY, RANDOMLY CAUSING OTHER DRIVERS TO PROPERLY SEE MY VEHICLE WHEN CHANGING LANES OR |

| | | |
|---|---|---|
| | | DRIVING NEXT TO THEM ON HIGHWAYS. |
| 2016 | July 2, 2018 | 2016 HONDA ACCORD. CONSUMER WRITES IN REGARDS TO BLOWN OUT DAY TIME RUNNING LIGHTS. *LD CONSUMER SENT ADDITIONAL CORRESPONDENCE. *LD *JS THE CONSUMER STATED THE MANUFACTURER WAS NOTIFIED BUT DID NOT OFFER ANY ASSISTANCE.*JS |
| 2016 | June 26, 2018 | MY 2016 HONDA ACCORD SPORT ONLY HAS 43,000 MILES AND ABOUT A WEEK AGO, THE LED LIGHT STRIP ON THE PASSENGER SIDE BURNED OUT. DEALERSHIP SAYS THAT WARRANTY WILL NOT COVER ( EVEN THOUGH I BOUGHT EXTENDED WARRANTY) AND IT WOULD BE UPWARDS OF $500 OR MORE TO REPLACE SINCE THE WHOLE LIGHT ASSEMBLY HAS TO BE REPLACED. SEROIUSLY??? I HAVE FOUND HUNDREDS OF COMPLAINTS ONLINE FROM OTHER CUSTOMERS WITH THE SAME ISSUE. WHEN DO YOU DRAW THE LINE AND CALL IT A DEFECT AND ISSUE A RECALL?? THIS FEATURE IS SUPPOSED TO BE CONSIDERED A SAFETY FEATURE BY HONDA. I FEEL THIS SHOULD NOT BE A CUSTOMERS RESPONSIBILITY TO REPLACE WHEN IT IS OBVIOUSLY A HONDA PROBLEM. |
| 2016 | June 15, 2018 | LED DAYTIMES RUNNING LIGHTS KEEP BURNING OUT |
| 2016 | September 26, 2017 | LED DAYTIME LIGHTS /REPLACED DRIVER SIDE AT 17,000 MILES NOW PASSENGER SIDE NEEDS TO BE REPLACED AT 27,000 MILES THIS ITEM COST ALONE IS $1300 EACH MAKING IT $2600 TO REPLACE THIS AMOUNT DOES NOT INCLUDE LABOR. I BELIEVE HONDA NEEDS TO RECALL THE LED LIGHTS AND REPLACE... THIS WILL NOT BE FAIR TO OWNERS OF THIS MODEL ONCE THEY REACH 36,000 MILES AND THE WARRANTY IS NOW VOID..... |
| 2016 | May 12, 2018 | THE DAY TIME RUNNING LED LIGHTS ON BOTH THE DRIVER'S SIDE AND PASSENGER SIDE HAVE BLOWN OUT AND AMERICAN HONDA HAS REFUSED TO FIX |

| | | |
|---|---|---|
| | | IT BECAUSE THE CAR IS OVER THE 36,000 MILE WARRANTY. THE CAR WAS UNDER TWO YEARS OLD FROM WHEN I PURCHASED IT. THIS PROBLEM IS WELL KNOWN TO AMERICAN HONDA AND IS NOT ONLY LIMITED TO THE HONDA ACCORD BUT OTHER MODELS. IT IS AN ENGINEERING DEFECT AND A SAFETY ISSUE. THE DAYTIME RUNNING LIGHTS ARE LISTED AS A SAFETY FEATURE ON THE WINDOW STICKER. AS LED DAYTIME RUNNING LIGHTS. AMERICAN HONDA SHOULD FIX THIS AT NO COST TO THE CUSTOMER, BECAUSE THESE LED BULBS ARE DEFECTIVE AND THEY ARE CHARGING $1,400.00 TO REPLACE BOTH SIDES. |
| 2016 | May 1, 2018 | BACK IN SEPT 2017, MY DRIVERS SIDE DRL LED STRIP WENT OUT, AND HONDA REPLACED IT, BUT CHARGED ME A DEDUCTIBLE OF $100. AROUNG MAY FIRST, 2018, MY PASSENGER SIDE DRL LED STRIP WENT OUT, AND HONDA IS SAYING THAT THE FIRST ONE WAS A COURTESY, BUT I HAVE TO PAY FOR THE MAJORITY OF THE REPAIR THIS TIME. LOOKING UP DIFFERENT ACCORD FORUMS, THE 2016 MODEL SEEMS TO HAVE AN ISSUE WITH THE DRL LED STRIPS. MANY PEOPLE HAVE REPORTED ISSUES WITH THE LIGHT, BUT HONDA IS CLAIMING THAT NO ONE HAS REPORTED THE ISSUE AT ALL, AND MY ISSUE IS DUE TO ME DRIVING FROM MILWAUKEE, TO CHICAGO EVERYDAY FOR WORK. LIGHTS ARE NOT WEAR AND TEAR PARTS, SO SHOULD NOT BE IMPACTED BY DRIVING 60 MILES IN EACH DIRECTION. HONDA IS REFUSING TO TAKE RESPONSIBILITY FOR AN OBVIOUS DEFECT, AND REQUIRING PEOPLE TO PAY WELL OVER $500 TO REPLACE THE FULL HEADLIGHT ASSEMBLY. |
| 2016 | March 4, 2018 | THE DAYLIGHT RUNNING LIGHTS (LED) FAILED AT APPX. 37,0000 MILES. THE PROBLEM SEEMS TO BE AN INADEQUATE HEAT SINK ON ONE LED CHIP WHICH |

| | | |
|---|---|---|
| | | CAUSES THE ACRYLIC TUBE TO MELT, BAD DESIGN. REPAIRING COST ABOUT $1500 REQUIRING TOTAL ASSEMBLY REPLACEMENT AS DLRS ARE UNREPAIRABLE. THIS IS 1) A MASSIVE DESIGN DEFECT 2) LEADING TO DRIVING WITH NO RUNNING LIGHTS 2) DUE TO UNAFFORDABLE COST OF REPAIR. THE PROBLEM IS WINDSPREAD |
| 2016 | January 23, 2019 | FRONT HEADLIGHT LED STRIP (USED AS RUNNING LIGHTS) BURNED OUT. THE LED STRIPS ARE NOT ABLE TO BE REPLACED SEPARATELY. THE ENTIRE HEADLIGHT UNIT HAS TO BE REPLACED TO REMEDY THE ISSUE. ONE WENT OUT AND WAS REPLACED UNDER WARRANTY. SHORTLY THEREAFTER, AFTER THE CAR WAS OUT OF WARRANTY THE OTHER STRIP WENT OUT. HONDA AMERICA OFFERED NO ASSISTANCE IN THE MATTER. VERY DANGEROUS TO NOT HAVE RUNNING LIGHTS. COST TO REPLACE THE ENTIRE LIGHT UNIT (WHICH, AGAIN, IS REQUIRED TO REMEDY THE ISSUE) IS UPWARDS OF $1,500 |
| 2016 | December 8, 2018 | LED HEADLIGHT STRIPS BURNED OUT WHICH ARE PART OF THE DAYTIME RUNNING LIGHT SAFETY FEATURE. DRIVER SIDE REPLACED AT 40K MILES AND PASSENGER SIDE IS NOW OUT AT 60K MILES. HONDA HAS NO COST EFFECTIVE WAY TO REPAIR OR REPLACE |

### 6. Honda's Knowledge of the Defective DRL Headlights from Class Member Complaints on Third-Party Websites

121. In addition to responding to complaints made directly to Honda by customers who tendered their vehicles to Honda and its agents for repair, such as Plaintiffs and many of the complainants referenced above, Honda routinely monitors the Internet for complaints similar in substance to those quoted below.

122. For example, Honda posts to the "Drive Accord" forum, a dedicated forum for Accord owners, under a proprietary handle, "HondaCustSrvc", through which it monitors and

responds to owner complaints.[18]

123.   The existence and use of the "HondaCustSrvc" handle demonstrates that Honda routinely monitors third-party websites (such as those identified below) for complaints concerning its vehicles, including complaints concerning the DRL Defect in Class Vehicles.

124.   Upon information and belief, the Honda Customer Experience Center carries out this function in addition to receiving and responding to customer calls concerning, *inter alia*, product defects.  Through these sources, Honda was made aware of the Defect.  The complaints, some of which are included below, also indicate Honda's early awareness of the Defect and its potential danger.

i.      "CarComplaints.com"[19]

| Model Year | Complaint Date | Comments |
| --- | --- | --- |
| 2016 | 6/1/2018 | 2 year old Accord 46,000 miles LED strip burned out... i called Honda explained my frustration and they were not helpful at all. Told me I have to pay the $1400 to have the headlight replaced!!!! I'm sorry on a 2 year old vehicle that is insane.. so now i am filing a case action lawsuit again Honda for not doing anything about a clearly defective headlight.. let me know if anyone would care to join! The woman i spoke to on the phone told me she can't help and to do what i have to do so this is my only option.... I have only owned Honda and it's sad to say but this is definitely my last! NISSAN HERE I COME!!! |
| 2016 | 4/2/2018 | I've seen many, many Honda Accord with burnt out LED strip from the headlights, and HONDA hasn't take action to correct this known issue. They should RECALL this issue since it cost $1300 to replace entire headlight unit for their ERROR. |
| 2016 | 7/6/2017 | I noticed the driver's side Daytime Running Lights halfway burnt out on my Accord with only 20,000+ miles on it. When I took into the Honda dealership where I purchased it to have an oil change done, I |

---

[18] https://www.driveaccord.net/forums/threadloom.php?query=user:HondaCustSrvc (last visited Feb. 12, 2019).

[19] 2017 model complaints available at https://www.carcomplaints.com/Honda/Accord/2017/lights/daytime_running_lights_out.shtml (last visited Feb. 12, 2019);  2016 model complaints available at https://www.carcomplaints.com/Honda/Accord/2016/lights/daytime_led_lights_burning_out.shtml (last visited Feb. 12, 2019)

| | | |
|---|---|---|
| | | made sure to mention this issue to them since it was still under warranty and I even have an extended 100,000 mile warranty. I was told that lights are not covered under the warranty and that I would have to pay for it to be repaired. I was informed that it would cost hundreds of dollars to be replaced and advised to wait until the other side burned out to have both of them done together. It only took a month or two before the other side burned out. When I researched online, I saw numerous posts related to this same issue and all of them were saying that Honda refused to replace or recall the lights. I have purchased Honda Accords for the past 15 years and they have always been reliable and service impeccable. But now I am extremely frustrated with Honda because of this issue. The replacement is extremely costly and I, like many others, think it is a product defect for these lights to burn out so soon. I have noticed 50% of the 2016-17 Honda Accords and one 2018 Honda Accord with the same issue. From what I have noticed, Honda vehicles are the only ones that have this problem. For this reason, I will never purchase another Honda after so many years of loyalty because it appears to me that they are using faulty parts and that concerns me of what else could burn out prematurely. |
| 2016 | 3/19/2018 | I was told by a friend that I had a light out on my accord, At this time, I am thinking it is the "pretty light" and should be an easy fix. I took the car in for an oil change two weeks later and let them know that my light needed to be fixed. This cute pretty light turned ugly by price. I was quoted 657...told in that way 657.... $657 for a light. Come to find out this is an LED light. The agent at Honda thought I was ready to pay $657 immediately for a light. Acted like it was no big deal. Pay it when you get your taxes she said ....I had no idea a light could even cost this much but was told that the head lights and such are much cheaper. You would think that I am driving around in a Mercedes for that price for a light that is supposed to last. While at Honda I had time to think. I have seen several accords with the same LED light out on the driver side. [vehicle reported as 37,000 miles] |
| 2016 | 9/8/2017 | Bought this 2016 Accord last year with 16K and its currently out of warranty with 37K. Last summer I noticed the driver side LED DRL light was fading and didn't realize that it would be such an expensive item to fix. In November, after being stopped by a (Nebraska State Trooper) I realized that half had gone out permanently. Only after this last incident I decided to return it back to the Honda dealership here in Denver Colorado for what I thought was going to be a routine light bulb replacement. BOY WAS I WRONG - I just got off the phone with the dealership service department and they stated that they would have to replace the ENTIRE drivers side light box component... NOT simply replace the LED strip. The cost would be nearly $1000 dollars since the warranty had expired and that it would need to take off the entire front bumper of the car as well as sell me a $700 service light unit (part #33150-TAA81) … In addition, only now I'm find out |

| | | |
|---|---|---|
| | | now that this would NOT be a good investment because its VERY likely that other passenger side LED DRL would likely go out months later, for an additional $1000 parts and labor!? wtf?? * So what ever you do... if its failing take it in before your warranty is out! Its my mistake for waiting on what I thought would be a simple routine $30 strip replacement. Update! * :: Honda America (https://automobiles.honda.com) has reached out to me and the dealership and has offered to cover only a portion of the (now newly adjusted $650 bill). They offered to cover $465 of the new out the door bill of $185 for just the drivers side headlight, which is significantly lower than $1000 that the dealership original offered me. After seeing all of the failures of BOTH driver side and passenger side DRL's ( on Youtube & honda-tech.com) my confidence is VERY LOW that this is the end of the story $$. ugh... I offered to pay $370 for both sides since it would be another day in the shop and another $185 parts and labor when the other side fails. No Bueno! - They came back with over $500 to replace both DRL lights. Additionally; Honda America said they would only fix what is broken and that this $185 deal may or may NOT be applied to fix the passenger side DRL when it fails. I feel at this point there should be a SAFETY RECALL on these DRL lights by Honda since they've have told me it is a safety issue. I think at this point fixing BOTH DRL lights is the best solution. |
| 2016 | 4/10/2018 | Honda did not want to replace the other running headlight, knowing that it will most likely take a crap prematurely. |
| 2016 | 3/1/2018 | The vehicle is just over 2 years old with 67,000 miles. The DRL burnt out with less than 2,500 hrs of use. Ridiculously short for an LED. This should be a minor repair and yet Honda decided to use a non repairable device so the costs are close to $1,000.00 for each headlight to repair. This is a safety issue and Honda needs to recall. People who own this vehicle will be shocked once the warranty runs out. This is not why I bought a Honda. |
| 2016 | February 22, 2018 | I noticed recently that my driver side DRL has half-failed. I contacted my dealership and they're going to replace it under warranty, but they won't replace the one that's still working (though I'm assuming there's some sort of defect if this is as widespread as it seems). Hopefully enough complaints will get honda to replace these for free since it's clearly not user error. |
| 2017 | 9/16/2017 | My 2017 Honda Accord Hybrid Touring had 18,000 miles on it when my passenger side LED DRL went out. Approximately three quarters of the LED strip went out. The full LED headlights still worked fine - it was just the LED daytime running light that went out. It is under warranty so I took to the dealership's service department and they had to special order the entire headlamp to correct the LED DRL outage. There was no cost to me because it was still under warranty, but the serviceman explained that should this happen outside of the warranty period of 36,000 miles I would have to pay $1,400.00 plus labor to |

| | | |
|---|---|---|
| | | have this repaired. After reading many similar complaints on this website I've deduced this is a common problem for which Honda should research and take corrective action - including replacements to customers at no cost up to 100,000 miles. LED technology is too progressive for Honda to not stand behind this common failure we are experiencing. |
| 2017 | 5/19/2018 | This is probably going to be my first and last car that I will be purchasing from Honda because thinking it would be affordable and reliable. I bought my 2017 Honda Accord Touring brand new off the lot on October 9 2016. The current mileage is 23132. I am disappointed with Honda for making the LED headlights such as big problem thinking that the LED lights suppose to last for a while. Isn't this suppose to be safety feature when driving??? It should have the life expectancy to last for many more years instead of a year and a half. So my DRL LED strips are not working on the passenger side. I took it into Stockton Honda dealership and one of the service adviser told me "you are lucky that you are under the 37,000 mileage manufacture warranty or else I will be paying between 1300k-1500k per headlights". I was like I only had the car for a year an a half with a mileage of 23k. Headlights ridiculously expensive. I was trying to avoid paying such cost like this in the future. I might as well go buy myself a Lexus or Acura instead because paying this amount for lights especially for an Accord. CRAZY. Honda lost a customer. Toyota here I come reliability and affordability. |

125.    The preceding exemplar complaints are all from one website, Carcomplaints.com, but other sites show that Honda's early awareness of the problems, as lights were failing before Class Vehicles even reached 10,000 miles. For example:

ii.      "Drive Accord"[20], an Accord-dedicated forum

| Model/ Year | Complaint Date | Comments |
|---|---|---|
| 2016 Honda Accord Touring | 9/24/2016 | One of the LEDs in the passenger side DRL went out recently with 9k miles on my touring. According to the dealer the cost to replace the headlight is $1100!!!!! ☺ They are covering it, but if it ever happens after the warranty there's no way I'm spending 1k for an LED. |
| 2016 Honda | 6/7/2016 | The left headlight DRL strip is half way off on my 2016 touring sedan, I looked for a bulb to replace but it's not showing any on the |

[20] https://www.driveaccord.net/forums/138-audio-electronics-lighting/312473-what-happens-if-bulb-led-drl-strip-goes-out.html (last visited Feb. 12, 2019).

| | | |
|---|---|---|
| Accord Touring | | parts catalog. Would appreciate if anyone has any info on this. Trying to avoid the hassle of taking it to the dealer. |
| 2016 Honda Accord | 9/15/2016 | Hey all, I know your original post was a back in may 2015... But I recently bought a 2016 Honda accord in Feb 2016. My rightside LED light strip went out and I brought my car into the service dept at the dealership I bought my car at. This is covered under the warranty and the service guy said this is something rare and doesnt happen often... If it wasn't under the warranty it would cost $400 for the whole headlamp casing; which needs to be replaced and not just the strip. |
| 2016 Honda Accord | 9/20/2017 | I had to have it replaced in my 2016 sedan already at 11,000 miles. The led DRL is built into the headlamp assembly so the whole thing had to be replaced. It was covered under warranty but it's going to suck when it goes out one day when the warranty is up. |

iii.   Honda Accord Forum[21]

| Model/ Year | Complaint Date | Comments |
|---|---|---|
| 2016 Accord | 7/13/2017 | I have 39K on my '16 Accord (EX-L) and just observed the inside LED running light on the driver side is not on. Is this an easy to replace item? I reached out to my sales person from 1 yr and 3 months ago to explain what has happened to see if he can get this replaced under warranty. I am afraid that he will not be able to do it. I find it very displeasing to find something to go bad so quickly. Has anyone else experienced this? Thanks in advance, Mike |

126.   The preceding exemplar complaints from Drive Accord and other fora, are but a smattering of those available on each, conclusively demonstrate Honda's knowledge of the Defect.

127.   In sum, as early as 2015, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, Honda was aware, or should have been aware, of the Defect, and/or was negligent in failing to be aware of the Defect, based on, among others, the following sources:

   a.   Pre-release design, manufacturing, engineering, and testing data;

   b.   Detailed data gathered by Honda about large number of Defect repairs;

---

[21] https://www.hondaaccordforum.com/forum/general-tech-help-7/driver-side-led-running-light-burned-out-64789/ (last visited Feb. 12, 2019).

c.   Knowledge Honda had of the large number of replacement headlight assemblies ordered from Honda;

d.    Numerous and consistent consumer complaints made directly to Honda about the Defect;

e.   Numerous and consistent consumer complaints collected by NHTSA ODI about the Defect;

f.   Numerous and consistent consumer complaints made on online vehicle owner forums; and

g.   Honda service center employees' familiarity with and knowledge of the Defect.

128.   Moreover, the large number and consistency of Class Member complaints describing the Defect underscores the fact that Class Members consider it to be a safety issue material to the reasonable consumer.

**C.**   **Honda's Warranty-Related Practices**

129.   Honda issues with every new Class Vehicle a bumper-to-bumper "New Vehicle Limited Warranty" (NVLW) through which it agrees to cure at no charge defects in materials or workmanship that  exist within the first three years or 36,000 miles of purchase. An exemplar of the warranty booklet that accompanies every Class Vehicle Honda sold is appended hereto as Exhibit A.

130.   Honda also provided Class Members who purchased Certified Pre-Owned Class Vehicles with a 1-year/12,000 mile bumper-to-bumper Limited Warranty.

131.   Honda provides these warranties to buyers and lessees after the purchase/lease of the Class Vehicle is completed; buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

132.   Honda also provides an express written warranty with all Honda replacement parts.

The DRLs and the headlight assemblies in which they are encased are covered by Honda's replacement part warranty, which promises that Honda will repair or replace any covered part that was originally installed by a Honda dealership at the consumer's expense.

133.    In order to secure warranty coverage, Plaintiffs and Class members need only tender their Vehicle to a Honda authorized dealership for repairs. *See* Ex. A at 37.

134.    Honda, however, routinely denies warranty coverage for the Defect on grounds that electrical wear components are not covered by either bumper-to-bumper warranty.

135.    Even when Honda does cover headlight assembly replacement, as its warranties require, Honda replaces the headlight assemblies with equally defective replacement parts that likewise are guaranteed to fail prematurely.

136.    Thus, when Honda replaces a failed DRL at its own expense, it does so using replacement parts that will eventually require affected Vehicle owners to replace the same assembly in the future at a cost of upwards of $1500. The same light, *i.e.*, the driver's light, or the passenger light, can fail multiple times, subjecting consumers to several thousands of dollars in repairs for the same light over the life of the car.

137.    Because Honda's "fix" is anything but, and merely shifts onto Plaintiffs and Class members the expense of continuously replacing headlight assemblies Honda has long known to be defective, Honda's warranty fails of its essential purpose, and recovery by the Class Members is not restricted to any written warranties promising to repair and/or correct defects, and they may seek all remedies as allowed by law.

138.    Equally egregious is Honda's refusal to replace *both* headlight assemblies when only one has failed within the warranty period, and despite knowing both DRLs are guaranteed to prematurely fail.

139.    Moreover, in its capacity as a warrantor, Honda's knowledge of the inherent

defects in the Class Vehicles render its efforts to limit the duration of express and implied warranties in a manner that would exclude coverage of the Defect unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void. The limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Honda and Plaintiffs and the other Class members, as, at the time of purchase and lease; Plaintiffs and the other Class members had no other options for purchasing warranty coverage other than directly from Honda.

140.   The limitations on the warranties also are substantively unconscionable. Honda knew that Class Vehicles are defective and would continue to pose safety risks after the warranties purportedly expired. Honda failed to disclose these defects to Plaintiffs and the other Class members while continuing to market Class Vehicles as safe and reliable, thus Honda's enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

## CLASS ALLEGATIONS

141.   Plaintiffs bring this action on their own behalf, and on behalf of a nationwide class pursuant to Federal Rule of Civil Procedure, Rule 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class:**

All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

142.   In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure, Rule 23(c)(5), Plaintiffs seek to represent the following state classes only in the event that the Court declines to certify the Nationwide Class above.  Specifically, the State Classes consist of each of the following:

**Maryland Class:**

All persons or entities in Maryland who are current or former owners and/or lessees of a Class Vehicle.

**California Class:**

All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes, as defined by California Civil Code § 1791(a).

**Florida Class:**

All persons or entities in Florida who are current or former owners and/or lessees of a Class Vehicle.

143. The Maryland, California, and Florida Classes shall be collectively referred to herein as the "State Classes, " in the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure, Rule 23(c)(5)**,** Plaintiffs Scalsky, Gonzales, and Mackey seek to represent the following subclass regardless of whether the Nationwide Class is certified:

**Warranty Denial Subclass**

All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle originally covered by Honda's New Vehicle Limited Warranty or Certified Pre-Owned Non-Powertrain Warranty, its one-year/12,000 mile replacement part warranty or any other extended warranty sold by Honda, and who presented their Class Vehicles to a Honda authorized dealer following failure of an LED DRL.

144. In the alternative to the Nationwide Warranty Denial Subclass, and pursuant to Federal Rule of Civil Procedure, Rule Fed. R. Civ. P. 23(c)(5), Plaintiffs seek to represent the following state classes only in the event that the Court declines to certify the Class above. Specifically, the State Classes consist of each of the following:

**Maryland Warranty Denial Subclass**

All persons or entities in Maryland who are current or former owners and/or lessees of a Class Vehicle originally covered by Honda's New Vehicle Limited Warranty or Certified Pre-Owned Non-Powertrain Warranty, its one-year/12,000 mile replacement part warranty or any other extended warranty sold by Honda, and who presented their Class Vehicles to a Honda authorized dealer following failure of an LED DRL.

**California Warranty Denial Subclass**

All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle originally covered by Honda's New Vehicle Limited Warranty or Certified Pre-Owned Non-Powertrain Warranty, its one-year/12,000 mile replacement part warranty or any other extended warranty sold by Honda, and who presented their Class Vehicles to a Honda authorized dealer following failure of an LED DRL.

**Florida Warranty Denial Subclass**

All persons or entities in Florida who are current or former owners and/or lessees of a Class Vehicle originally covered by Honda's New Vehicle Limited Warranty or Certified Pre-Owned Non-Powertrain Warranty, its one-year/12,000 mile replacement part warranty or any other extended warranty sold by Honda, and who presented their Class Vehicles to a Honda authorized dealer following failure of an LED DRL.

145.    The Nationwide Class, Warranty Denial Subclass and other State Classes shall be collectively referred to herein as the "Class."  Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case.  Plaintiffs reserve the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

146.    <u>Numerosity</u>:  Upon information and belief, the Class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Honda and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that hundreds of thousands of Class Vehicles have been sold and leased in the United States.

147.    <u>Existence and Predominance of Common Questions of Fact and Law</u>:  Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, whether:

a. The Class Vehicles were sold with a Defect;

b. Honda knew of the Defect but failed to disclose the Defect and its consequences to its customers;

c. A reasonable consumer would consider the Defect or its consequences to be material;

d. The Defect renders Class Vehicles unsuited for the ordinary and intended purpose of providing safe and reliable transportation;

e. Honda has breached its express and implied warranties and violated the Magnuson-Moss Warranty Act;

f. Honda's express warranties fail of their essential purpose and/or are unconscionable and unenforceable;

g. Honda should be required to disclose the existence of the Defect and expand its warranty coverage and/or recall Class Vehicles; and

h. Honda's conduct violated state consumer protection statutes.

148. <u>Typicality</u>:  All of the Plaintiffs' claims are typical of the claims of the Class since each Plaintiff purchased a Class Vehicle with the Defect, as did each member of the Class. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Honda's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

149. <u>Adequacy</u>:  Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class(es) they seek to represent, and they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

150. <u>Superiority</u>:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Honda's conduct.  It

would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Honda's vehicle identification numbers, warranty claims, registration records, and database of complaints.

151.    Honda has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**VIOLATION OF MARYLAND'S CONSUMER**
**PROTECTION ACT ("MCPA")**
**(Md. Code, Com. Law § 13-301, *et seq.*)**
**(On Behalf of the Maryland Class)**

152.    Plaintiff Scalsky ("Plaintiff" for purposes of this count) and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

153.    Defendants are "persons" as that term is defined in Maryland Code, Commercial Law section 13-101(H).

154.    Plaintiff and the Class are "consumers" as that term is defined in Maryland Code, Commercial Law section 13-101(C)(1).

155.    Defendants engaged in unfair and deceptive acts in violation of the MCPA by willfully failing to disclose and actively concealing the dangerous risk of the Defect in the Class Vehicles as described above.  At a minimum, Defendants' acts and practices violate the following

sections of the MCPA:

> (1) making false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;
>
> (2)(i) Representing that consumer goods have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;
>
> (2)(iv) Representing that consumer goods are of a particular standard, quality, grade, style, or model which they are not;
>
> (3) Failing to state a material fact that tends to deceive, namely, failing to disclose that Class Vehicle suffer from the Defect, will not work as advertised and eventually will fail;
>
> (5)(i) Advertising goods and services with the intent not to sell them as advertised; and
>
> (9)(i) Engaging in a deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of any consumer goods.

156. The Defect constitutes a safety issue that triggered Defendants' duty to disclose the safety issue to consumers as set forth above.

157. Defendants should have disclosed this information because they were in a superior position to know the true facts related to the Defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to this Defect. Defendants, by the conduct, statements, and omissions described above, also knowingly and intentionally concealed from Plaintiffs and the Class members that Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of this problem).

158. These acts and practices have deceived Plaintiff and are likely to deceive the public. Defendants, by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and the Class members that the Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of this

problem), breached their duties to disclose these facts, violated the MCPA, and caused injuries to Plaintiff and the Class members.  The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff and Class members, as it would have been to all reasonable consumers.

159.    The injuries suffered by Plaintiff and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class members should have reasonably avoided.

160.    Defendants' conduct proximately caused injuries to Plaintiff and other Class members.  Had Plaintiff and the Class known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them or would have avoided the extensive repair costs associated therewith.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA'S**
**CONSUMERS LEGAL REMEDIES ACT ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(On Behalf of the California Class)**

161.    Plaintiff Gonzales ("Plaintiff" for purposes of California state law claims) and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

162.    Defendants are "persons" as that term is defined in California Civil Code section 1761(c).

163.    Plaintiff and the Class are "consumers" as that term is defined in California Civil Code section 1761(d).

164.    Defendants engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiff and Class members that the Class Vehicles suffer from a design defect (and the costs, risks, and diminished

value of the vehicles as a result of this problem).  These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

165.    Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

166.    Defendants knew that their Class Vehicles and their LED Daytime Running Lights were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

167.    Defendants were under a duty to Plaintiff and the Class to disclose the defective nature of the Class Vehicles and the Defect because:

a.      Defendants were in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles;

b.      Plaintiffs and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles and had a dangerous safety defect until manifestation of the defect;

c.      Defendants knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover the safety and security defect and the associated repair costs necessitated thereby until the manifestation of the defect; and

d.      Defendants actively concealed the safety and security defect and the associated repair costs by claiming the Defect does not exist and, in many cases, repairing Class Vehicles using similarly defective LED DRL headlights.

168.    In failing to disclose the Defect and the associated safety risks and repair costs that

result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

169.    The facts concealed or not disclosed by Defendants to Plaintiff and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price.  Had Plaintiff and the Class known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them or would have avoided the extensive repair costs associated therewith.

170.    Under California Civil Code section 1780(a), Plaintiff and members of the Class seek injunctive and equitable relief for Defendants' violations of the CLRA. Plaintiff and the Class reserve the right to amend this Complaint to include a request for damages under the CLRA after complying with California Civil Code 1782(a) after the commencement of this action.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE**
(CAL. BUS. & PROF. CODE § 17200, *et seq.*)
(On Behalf of the California Class)

171.    Plaintiff Gonzales and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

172.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

173.    Defendants have engaged in unfair competition and unfair, unlawful and/or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and the Class members that the Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as

a result of this problem).  Defendants should have disclosed this information because they were in a superior position to know the true facts related to this design defect, and Plaintiff and Class members could not reasonably be expected to learn or discover the true facts related to this defect.

174.    The Defect constitutes a safety issue that triggered Defendants' duty to disclose the safety issue to consumers as set forth above.

175.    These acts and practices are fraudulent because they have deceived Plaintiff and are likely to deceive the public.  In failing to disclose the Defect and suppressing other material facts from Plaintiff and the Class members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff and the Class members.  The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff and Class members, as it would have been to all reasonable consumers.

176.    The injuries suffered by Plaintiff and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class members should have reasonably avoided.  Therefore Defendants also have engaged in unfair practices.

177.    Defendants' acts and practices also are unlawful because they violate California Civil Code sections 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code section 2313. Plaintiff seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitution and disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business and Professions Code section 17200.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY PURSUANT TO SONG-BEVERLY CONSUMER WARRANTY ACT

**(Cal. Civ. Code § 1797, *et seq.*)**
**(On Behalf of the California Class)**

178.    Plaintiff Gonzales and the Class incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

179.    Class Vehicles are "consumer goods" under Cal. Civ. Code § 1791(a).

180.    Defendants were at all relevant times "manufacturers" and sellers of the Class Vehicles under Cal. Civ. Code § 1791(j).

181.    Plaintiff and the Class members bought or leased Class Vehicles designed, manufactured, warranted, marketed to them, and intended to be purchased or leased by consumers such as them, by Defendants.

182.    Defendants expressly warranted the Class Vehicles against defects, including the DRL Defect, as described above, within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2.

183.    As described above, the DRLs equipped in Class Vehicles, and the headlight assemblies in which they are installed, are defective. The Defect substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiffs and Class members.

184.    Defendants knew of the Defect when they expressly warranted the Class Vehicles, wrongfully and fraudulently concealed material facts regarding the Defect, failed to inform Class members that the Class Vehicles had the Defect, and induced Plaintiffs and Class members to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

185.    Defendants are obligated, under the terms of their express warranties and pursuant to Cal. Civ. Code §§ 1793.2 and 1795.4, to effectively and within a reasonable time repair the Defect at no cost to Plaintiffs and Class members.

186.    Defendants breached their express warranties by supplying the Class Vehicles to

Plaintiffs and Class members with the Defect, by failing to provide repairs within a reasonable time, and by replacing defective parts with equally defective replacement parts instead of providing a one-time, effective fix.

187.    Defendants breached their express warranties by failing to repair the Class Vehicles under warranty and by failing to provide to Plaintiffs or Class members, as a warranty replacement, a product that conforms to the qualities and characteristics that it promised when it sold the Class Vehicles to Plaintiffs and Class members.

188.    As more fully detailed above, Defendants were provided with appropriate notice and has been on notice of the Defect and of their breach of the express written warranties from various sources, including Plaintiffs.

189.    Plaintiffs have given Defendants a reasonable opportunity to cure their failures with respect to the warranties, and Defendants have failed to do so.

190.    Affording Defendants any further opportunity to cure their breach of written warranties is unnecessary and futile here.

191.    Any express warranties promising to repair and/or correct any defects fail in their essential purposes because the contractual remedy is insufficient to make Plaintiffs and Class members whole and because Defendants have failed and/or has refused to adequately provide the promised remedies within a reasonable time.

192.    Accordingly, recovery by the Class is not restricted to any written warranties promising to repair and/or correct defects, and it seeks all remedies as allowed by law.

193.    Any attempt by Defendants to limit or disclaim the express warranties in a manner that would exclude coverage of the Defect is unenforceable and void pursuant to Cal. Civ. Code § 1790.1.

194.    As a direct and proximate result of Defendants' breach of their express warranties,

Plaintiffs and Class members received goods that have substantially impaired value and have suffered damages in an amount to be determined at trial.

195.    Pursuant to Cal. Civ. Code § 1794 and 1795.4, Plaintiffs and Class members are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY PURSUANT TO SONG-BEVERLY CONSUMER WARRANTY ACT
### (Cal. Civil Code §§ 1792, 1791.1, *et seq.*)
### (On Behalf of the California Class)

196.    Plaintiff Gonzales and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

197.    At all relevant times hereto, Defendants were the manufacturers, distributors, warrantors, and/or sellers of the Class Vehicles.  Defendants knew or should have known of the specific use for which the Class Vehicles were purchased.

198.    Defendants provided Plaintiff and the Class Members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold.

199.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, *inter alia*, the following: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Honda were safe and reliable for providing transportation and would not experience premature LED DRL headlight failure due to a design and/or manufacturing defect; that (ii) a warranty that the Class Vehicles would be fit for their intended use – providing safe and reliable transportation – while the Class Vehicles were being operated, and that (iii) the Class Vehicles conform to the promise or affirmations of fact made on the vehicle sticker label.

200.     Contrary to the applicable implied warranties, however, the Class Vehicles are not fit for their ordinary purpose of providing safe and reliable transportation because of the Defect.

201.     Defendants breached implied warranties applicable to Class Vehicles at the time of sale because the Defect was latent at the time Plaintiff and Class Members purchased their vehicles.

202.     Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code sections 1792 and 1791.1.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE FLORIDA**
**DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,**
**(FLA. STAT. ANN. § 501.201, *et seq.*)**
**(On Behalf of the Florida Class)**

203.     Plaintiff Mackey and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

204.     Plaintiff Mackey ("Plaintiff" for purposes of this Count) brings this claim on behalf of herself and the Florida Class against all Defendants.

205.     Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

206.     The actions of Defendants, as set forth above, occurred in the conduct of trade or commerce.

207.     In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risk of the Defect in the Class Vehicles as described above. Accordingly, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in Florida Statute § 501.204(1), including

representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

208.    The Defect constitutes a safety issue that triggered Defendants' duty to disclose the safety issue to consumers as set forth above.

209.    Defendants should have disclosed this information because they were in a superior position to know the true facts related to the Defect, and Plaintiff and Class members could not reasonably be expected to learn or discover the true facts related to this Defect.  Defendants, by the conduct, statements, and omissions described above, also knowingly and intentionally concealed from Plaintiff and the Class members that Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles associated therewith).

210.    These acts and practices have deceived Plaintiff and are likely to deceive the public. Defendants, by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and the Class that Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles associated therewith), breached their duties to disclose these facts, violated the FDUTPA, and caused injuries to Plaintiff and the Class members.  The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff and Class members, as it would have been to all reasonable consumers.

211.    The injuries suffered by Plaintiff and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class members should have reasonably avoided.

212.    Defendants' conduct proximately caused injuries to Plaintiff and other Class members.  Had Plaintiff and the Class known about the defective nature of the Class Vehicles,

they would not have purchased the Class Vehicles, would have paid less for them, or would have avoided the extensive repair costs associated therewith.

### SEVENTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**(On Behalf of the Warranty Subclass or, Alternatively the Warranty State Classes)**

213.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

214.   Defendants provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the bargain.  Accordingly, Defendants' warranties are express warranties under state law.

215.   The parts affected by the Defect, including but not limited to the LED DRLs, were manufactured and distributed by Defendants in the Class Vehicles and are covered by the warranties Defendants provided all purchasers and lessors of Class Vehicles.

216.   Defendants breached these warranties by selling and leasing Class Vehicles with the Defect and refusing to honor the warranties by providing free and effective repairs, and by providing ineffective repairs guaranteed to fail.

217.   Any attempt by Defendants to limit or disclaim the express warranties in a manner that would exclude coverage of the Defect is unenforceable and void, because it would be unconscionable to permit Defendants to disclaim a Defect of which they knew prior to selling Class Vehicles while continuing to market Class Vehicles as safe and reliable.

218.   Plaintiffs notified Defendants of the breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breach of written warranty would have been futile.  Defendants also know of the Defect and yet have chosen to conceal it and to fail to comply with their warranty obligations.

219.   As a direct and proximate cause of Defendants' breach, Plaintiffs and the other

Class members incurred substantial repair costs for which Defendants should have borne responsibility pursuant to the terms of their express warranties.

220.    Plaintiffs and the Warranty Subclass members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

221.    Any express warranties promising to repair and/or correct any defects fail in their essential purposes because the contractual remedy is insufficient to make Plaintiffs and Class members whole and because Defendants have failed and/or has refused to adequately provide the promised remedies within a reasonable time.

222.    Accordingly, recovery by the Class is not restricted to any written warranties promising to repair and/or correct defects, and it seeks all remedies as allowed by law.

**EIGHTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**(On Behalf of the Nationwide Class or, Alternatively, Each of the State Classes)**

223.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

224.    Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendants knew or had reason to know of the ordinary purpose for which the Class Vehicles were purchased.

225.    Defendants provided Plaintiffs and the other Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffered from the Defect at the time of sale that causes the LED DRL headlights to fail prematurely.  Because Class Vehicles require these lights to be free

from defects, the Class Vehicles are not fit for their ordinary purpose of providing safe and reliable transportation.

226.     Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; that (ii) a warranty that the Class Vehicles would be fit for their ordinary use while the Class Vehicles were being operated, and that (iii) the Class Vehicles conform to the promise or affirmations of fact made on the vehicle sticker label.

227.     On its vehicle labeling, Honda advertises its DRL Daytime Running lights as a safety feature.

228.     Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the other Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles suffer from the Defect alleged herein.

229.     Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for ordinary use.

### NINTH CAUSE OF ACTION
**VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, *et seq.***
**(On behalf of the Warranty Denial Subclass)**

230.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

231.     Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, in response to widespread consumer complaints regarding misleading and deceptive warranties. The Act imposes civil liability on any "warrantor" for failing to comply with any obligation under

written and implied warranties. 15 U.S.C. § 2310(d)(1).

232.    The Class Vehicles are consumer products as defined by 15 U.S.C. § 2301(1).

233.    Plaintiffs and Class members are "consumers" as defined by 15 U.S.C. § 2301(3).

234.    Defendants are warrantors and suppliers as defined by 15 U.S.C. § 2301(4) and (5).

235.    Defendants have failed to remedy the DRL Defect despite their knowledge and notice of said defect in the Class Vehicles.

236.    Defendants expressly warranted that their Class Vehicles would be free of defects.

237.    At the time Defendants issued written warranties for the Class Vehicles, they knew and had notice that the vehicles were susceptible to the Defect, including *inter alia,* (1) damage to the DRLs and assembly; (2) lowered value of Class Vehicles; and/or (3) unsafe driving conditions for consumers and others on the roadways. Defendants' continued misrepresentations and omissions concerning the Defect, as well as their failure to abide by their own written and implied warranties, are "unfair methods of competition in or affecting commerce, and [are] unfair or deceptive acts or practices in or affecting commerce." Accordingly, their behavior is unlawful under 15 U.S.C. §§ 2310(b), 45(a)(1).

238.    Plaintiffs and Class members seek to recover damages caused as a direct result of Honda's breach of its written and implied warranties and its deceitful and unlawful conduct. Damages include costs associated with repairing or replacing the Class Vehicles with non-defective vehicles and/or replacement of defective DRLs.

239.    The Magnuson-Moss Warranty Act also provides for "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). Accordingly, Plaintiffs and Class members seek reformulation of Defendants' written warranty to comport with their obligations under the Act and with consumers' reasonable expectations. Additionally, Plaintiffs seek to enjoin Defendants from acting unlawfully as further alleged, including discouraging Plaintiffs from seeking all available remedies.

The Magnuson-Moss Warranty Act also provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in the Court's discretion. 15 U.S.C. § 2310(d)(2). Plaintiffs intend to seek such an award as prevailing consumers at the conclusion of the case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully request that this Court:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B. appoint Plaintiffs Scalsky, Gonzales, and Mackey as the representatives of the Class and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and the Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Defect;

F. award reasonable attorneys' fees and costs; and

G. grant such further relief that this Court deems appropriate.

Dated:  February 18, 2019                    Respectfully submitted,

                                             BY:    /s/ James P. Ulwick
                                                    James P. Ulwick (Fed. Bar No. 00536)
                                                    **Kramon & Graham PA**
                                                    One South Street, Suite 2600
                                                    Baltimore, Maryland 21202
                                                    Telephone: (410) 752-6030
                                                    Facsimile: (410) 539-1269
                                                    julwick@kg-law.com

OF COUNSEL:

/s/ Daniel Herrera
Daniel O. Herrera
Brian P. O'Connell
150 S. Wacker, Suite 3000
Chicago, Illinois 60606
Telephone: 312-782 4880
Fax: 312-782-4485
dherrera@caffertyclobes.com
boconnell@caffertyclobes.com

Bryan L. Clobes
205 N. Monroe St.
Media, PA 19063
Telephone: (215) 864-2800
Fax: (215) 964-2808
bclobes@caffertyclobes.com
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**